## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL R. SEALE, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | Filed Electronically |
| | ) | |
| vs. | ) | |
| | ) | |
| ANNUITY FYI; PERFORMANCE | ) | |
| ARBITRAGE; FINANCIAL PRODUCTS | ) | |
| DISTRIBUTORS; DAVID WOODARD, | ) | |
| individually and as control person of | ) | |
| Performance Arbitrage; ANDREW | ) | |
| GAMBER, individually and as control | ) | |
| person of Performance Arbitrage and | ) | |
| Financial Products Distributors; LIFE | ) | |
| FUNDING OPTIONS; KATE SNYDER | ) | |
| and MICHELLE PLANT, individually and | ) | |
| as owners of Life Funding Options; | ) | |
| UPSTATE LAW GROUP, LLC; and | ) | |
| CANDY KERN-FULLER, individually and | ) | |
| as a partner of Upstate Law Group, LLC, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

## I. INTRODUCTION

1.      During the period 2016 through 2017, plaintiff Dan Seale invested over $500,000 in annuities and federal pensions through Defendants.  Defendants misrepresented the investments products to Plaintiff and omitted to provide material information concerning the investment products to Mr. Seale.  Defendants' misrepresentations of the investment products to Mr. Seale and Defendants' omissions of material information constituted gross negligence, misrepresentation and fraud, and civil conspiracy under Pennsylvania common law as well as violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §

201-1 *et seq.,* Pennsylvania's Securities Act and §§ 12a(2) and 15 of the Securities Act of 1933, 15 U.S.C. § 77*l*.

2.      All but three of the investments that Mr. Seale purchased from Defendants are now in default.  Mr. Seale has been damaged by Defendants' actions in an amount in excess of $500,000.

## II.  PARTIES

3.      Plaintiff Daniel R. Seale is a resident of Pittsburgh, Allegheny County, Pennsylvania.

4.      Defendant Annuity FYI has a principle place of business located at 1165 NE 105 Street, Miami Shores, Florida, 33128-2126.

5.      Defendant Performance Arbitrage Company, Inc. represents that it is located at 232 Market Street, Flowood, Mississippi, 39232.   Among other websites, Performance Arbitrage promotes itself on http://mypaconline.com.

6.      Defendant Financial Products Distributors is, on information and belief, located at 232 Market Street, Flowood, Mississippi 39232.

7.      Defendant David Woodard is a resident of 1250 S. Capital of TX Highway, Building 3, Suite 400, Austin, Texas, 78746 and the control person of Performance Arbitrage Company, Inc.

8.      Defendant Andrew Gamber is a resident of Arkansas and reportedly resides at 742 County Road 464, Jonesboro, Arkansas 72404.  He also reportedly has maintained an office at 1000 Highland Colony Park.  That address is, in fact, actually a convenience address operated by

Regus Offices. On information and belief, Gamber is an investor in or effectively controls Performance Arbitrage and/or Financial Products Distributors.

9.      Defendant Life Funding Options' principle place of business is located at 128 Millport Circle, Suite 200, Greenville, South Carolina, 29607.

10.     Defendants Kate Snyder and Michelle Plant are the owners and managers of Life Funding Options.  On information and belief, they are or were affiliated with Woodard.  The company's principle place of business is located at 128 Millport Circle, Suite 200, Greenville, South Carolina, 29607.

11.     Defendant Upstate Law Group, LLC is a law firm located at 200 East Main Street, Easley, South Carolina, 29640.  Upstate Law Group has maintained one or more IOLTA accounts at institutions such as SunTrust Bank N.A. and Community 1st Bank through which the payments to and from Defendants flow in connection with the pension scam described below.

12.     Defendant Candy Kern-Fuller is a resident and citizen of the State of South Carolina.  She is an attorney and partner in Upstate Law Group, LLC.  She is the registered agent for service of process for Life Funding Options.

13.     Kern-Fuller and Upstate have acted as a key conduit in the scam through their law firm IOLTA account, which effectively has acted as the central bank for the schemes.  In addition, Kern-Fuller and Upstate (1) reviewed and assisted veterans in obtaining identity and financial verification documents; (2) received authorization from veterans to make inquiries of the Veterans Administration to confirm the veteran's income and other matters associated with the scheme; (3) facilitated the execution of the contracts; (4) provided "escrow" services for the persons who buy the veterans' loans; (5) sued allegedly defaulting veterans in an effort to enforce the agreements; and (6) opposed attempts to discharge such debt through bankruptcy.

14.     Associated person Richard Zaehringer worked as an employee, agent and/or representative of Defendants at the time of the sale of the investment products to the Mr. Seale working at the principle place of business of Annuity FYI, located at 77 Water Street 8th Floor New York, NY 10005.  Upon information and belief, his current address is 34170 N. Lakeside Drive, Grayslake, Illinois, 60030-1020.

### III. JURISDICTION

15.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's claims of violations of the Securities Act of 1933.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) with respect to Plaintiff's state statutory and common law claims.

16.     This Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) and (c) in that the parties are citizens of different states.

17.     Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because, at all times relevant hereto, Defendants and/or their agents or employees, conducted business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### IV.  FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

18.     Dan Seale received a Bachelor of Science degree from California Coast University in Business Administration.  He served in the U.S. Navy as an Avionics Technician Petty Officer 3rd Class and acting Plane Captain on the flight line.

19.     Mr. Seale was married and has a daughter, son-in-law and grandson.  Mr. Seale has spent his career in customer and medical services management.  He is currently the business manager for a private school near Pittsburgh, Pennsylvania.

20.     In August 2016 Mr. Seale, not sure about the stability of the stock market, began looking for possible alternative investments.  Following an internet search for national annuity providers, Mr. Seale contacted Annuity FYI based on the information provided on the company's web page.

21.     Mr. Seale was quickly contacted by Richard Zaehringer, who identified himself as an agent and employee of Annuity FYI.  Zaehringer met with Mr. Seale at his home in early September 2016.  Zaehringer spent considerable time telling Mr. Seale about his background, his expertise with retirement planning and his commitment to fully explaining each potential investment that he showed his clients.

22.     Mr. Seale told Zaehringer that he was not looking to get rich, rather he was interested in investments that were extremely safe and that would act as a retirement payment plan and to pass on to his family.

23.     Zaehringer showed Mr. Seale a plan from Penn Mutual with legacy benefits for his family, the Penn Mutual Multi-Generation Legacy plan.  Zaehringer told Seale that he owned three of these Penn Mutual investment products himself, one for himself, one for his wife and one for his child.

24.     Mr. Seale agreed to the recommendation to purchase the Penn Mutual investment product, and Zaehringer set up a meeting with Mr. Seale and his daughter to explain the investment to her and have Mr. Seale sign documents.  Mr. Seale signed documents relating to the Penn Mutual

investment and a document making IRS Services Trust custodians for the money to be generated by Mr. Seale's investments through Zaehringer.

25.     In conjunction with the Penn Mutual product, Zaehringer recommended to Mr. Seale that he invest in nine structured federal pension contracts through Performance Arbitrage Company, Inc. and Financial Products Distributors owned by David Woodard and/or Andrew Gamber.  Mr. Seale agreed to the recommendations and signed a two-page Purchase Application for each contract.  The first page of each contract was blank and was apparently filled in later.  Mr. Seale did not realize until December 2017 that the two-page document was part of a much larger "Fulfillment Kit," which Zaehringer never showed him.

26.     Zaehringer said that the federal pensions were independent contracts with former federal employees, mostly veterans.  He told Mr. Seale that the federal pensions were backed by the federal government, and said that David Woodard, who Mr. Seale understood to be handling the federal pensions, had placed "several million in this plan and never had a problem."

27.     Zaehringer explained the federal pensions to Mr. Seale as follows: "An individual who receives a federal pension, typically a military pension, would rather have a lump sum rather than the monthly stream of income.  We have an exclusive contract to find an individual who needs income stream in exchange for a lump sum and essentially match up needs.  Those individuals who own the pensions are only allowed to "sell" a maximum of ten years of pension payments. The federal government backs the pension, not an insurance company.  For added protection for the purchaser, there is a life insurance [policy] on those individuals selling part of their pension to cover the purchaser should the seller die during the payout."

28.     Zaehringer told Mr. Seale repeatedly that once Mr. Seale bought the seller's benefits, the Federal government, through the Treasury Department, would send the benefits to the escrow agent and the seller was out of the equation.  This was not true.

29.     Furthermore, the sales of these federal pension contracts were illegal.  All of the defendants involved in these transactions violated the Federal Anti-Assignment Acts, including Sections 38 U.S.C. § 5301(a) and 37 U.S.C. § 701.

30.     Zaehringer told Mr. Seale that the nine structured settlement contracts were the equivalent of an "immediate annuity" that would pay Mr. Seale $6,727.14 a month for ten years. Of that amount, $3,103.33 would be deposited each month in the Penn Mutual legacy plan that would then come into effect in 2027 and pay Mr. Seale a "supplement salary" for the rest of his life, and then would be passed on to his daughter and continue on for one more generation.

31.     Zaehringer told Mr. Seale that Upstate Law Group would be the escrow agent. During this time Zaehringer continued to repeat what he had told Mr. Seale repeatedly, that "the Buyer is protected from all, both those known and unknown" . . . that "Upstate Law Group . . . will monitor for receipt of payments and inform Zaehringer's firm as the Distributor, Performance Arbitrage Company, and the Buyer if a payment is received."

32.     Sometime around April 2017 Life Funding Options purchased or absorbed Performance Arbitrage.  Mr. Seale was notified of this in November 2017 and shortly thereafter Life Funding Options suspended November, December and January payments.

33.     In December 2017 after several conversations with Zaehringer, about contracts that were not being paid, in which it was clear that Zaehringer was effectively trying to remove himself and Annuity FYI from representing Mr. Seale, Zaehringer told Mr. Seale to call Upstate Law Group, Performance Arbitrage and Financial Products about the defaulted payments.

7

Zaehringer had told Mr. Seale that David Woodard and Upstate Law Group were not talking to him.

34.     During a meeting with Upstate Law Group on December 13, 2017 Candy Kern-Fuller told Mr. Seale that Zaehringer was lying about Woodard and Upstate not talking to him. She said that Zaehringer knew full well why Life Funding Options was doing what they were doing in withholding payments, i.e. that the pensioners themselves had defaulted on the contracts.

35.     Candy Kern-Fuller further declared that Mr. Seale had accepted the risks with the structured settlement contracts. Mr. Seale's response was that he had never seen any contract stating the risk of the investment. Candy Kern-Fuller then drop-boxed one of the contracts, PRN1387, to Mr. Seale. Mr. Seale stated that this was the first time he had seen this document which was called the Fulfillment Kit.

36.     During December 2017, Zaehringer again stated to Mr. Seale that federal funds due under the contracts go directly to the escrow agent, just as he had prior to the original sale of these products.  Zaehringer reaffirmed this position and said that the pensioner "sellers" were supposed to be out of the equation after the sale of his/her pension to the buyer, in this case Mr. Seale.  Zaehringer said he was told this by Woodard, who provided training to Zaehringer with respect to these products.

37.     In January 2018, Life Funding Options bought contracts that were in default in Mr. Seale's account and issued Promissory Notes, which were supposed to pay 100% of the monthly contracted payment

38.     Life Funding Options made sporadic payments on Mr. Seale's contracts through August 1, 2018.  In early January 2019 Life Funding Options suspended operations and payments on the IRA Services accounts.

39.     On information and belief, Kern-Fuller and Upstate Law Group have used their firm's IOLTA account as the conduit through which the other defendants channel their monies in connection with the schemes described above.  Without limiting the generality of the foregoing, the investors have made their lump sum deposits into this IOLTA account and, under the direction of Kern Fuller and Upstate Law Group, the funds were then dispersed to the veterans and to one or more of the defendants. Kern-Fuller and Upstate Law Group also have received the veterans' monthly payments directly from the Veterans Administration and sent each veteran the remainder of the benefit payment, after deducting the veteran's loan repayment amount.

40.     Collectively, Defendants maintained a network of web sites designed to attract financially desperate veterans seeking a source of ready cash.   The defendants promised veterans that they will find buyers, like Mr. Seale, to purchase the stream of the veteran's pension income.

41.     None of the documents or other disclosures made to Mr. Seale discloses that these transactions are prohibited and void under the Federal Anti-Assignment Acts, nor do they reveal the multiple lawsuits and regulatory actions taken against the defendants by the states of Mississippi, Texas, Pennsylvania, New Mexico, California  and Arkansas.

42.     On information and belief, the defendants here extracted substantial "commissions" in connection with Mr. Seale's structured products without disclosing this fact to Mr. Seale or the veterans.

43.     None of the defendants were registered to sell securities in Pennsylvania, and the federal pension contracts were not registered to be sold in Pennsylvania.

## V.  LEGAL CLAIMS

## COUNT ONE – VIOLATION OF SECTION 12 OF SECURITIES ACT

44.     Plaintiff incorporates by reference all paragraphs above.

45.     This Count is brought pursuant to § 12a(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*, by Mr. Seale against all Defendants.

46.     Defendants were sellers, offerors, and/or solicitors with respect to the federal pension investments sold to the plaintiff.

47.     Defendants were not registered to sell the federal pension investments to Mr. Seale, and the federal pension securities themselves were not registered.

48.     The individual defendants participated in the preparation of the documents used to sell the federal pension investments.

49.     The documents by which the federal pension investments were offered to Plaintiff and others were inaccurate and misleading, contained untrue statements of material fact, omitted to state facts necessary to make the statements therein not misleading, and omitted to state material facts required to be stated therein.

50.     Defendants were aware of the misleading nature of the documents used to sell the federal pension investments.

51.     Through the conduct alleged above, Defendants violated, are liable under, or controlled a party who is liable under §12a(2) of the Securities Act.

52.     Plaintiff has been damaged and is entitled to all relief from Defendants permitted by § 12a(2) of the Securities Act.  Mr. Seale hereby tenders the investments to Defendants.

53.     At the times Mr. Seale purchased the federal pension investments, he did not know and could not reasonably have known of the misleading statements, omissions, and misconduct set

forth above.  Less than one year has elapsed from the time that Plaintiff discovered, and could reasonably have discovered, the misconduct giving rise to this case.


## COUNT TWO – VIOLATION OF SECTION 15 OF SECURITIES ACT

54.     Plaintiff incorporates by reference all paragraphs above.

55.     This Count is brought pursuant to § 15 of the Securities Act, 15 U.S.C. § 77*o*, by Mr. Seale against individuals Woodard, Snyder, Plant, and Kern-Fuller.

56.     Defendants were control persons of Annuity FYI, Performance Arbitrage, Financial Products Distributors, Life Funding Options, and Upstate Law Group by virtue of their positions as directors or senior officers of these entities and/or by virtue of their relationships with the entities.  Defendants exercised control over the general affairs of these entities and had the power to control the conduct giving rise to Plaintiff's claims.

57.     Defendants are therefore liable for the Securities Act violations alleged in Count One above.


## COUNT THREE – VIOLATION OF PENNSYLVANIA SECURITIES ACT

58.     Plaintiff incorporates herein all paragraphs above.

59.     In connection with the offer and sale of securities, defendants intentionally and recklessly employed devices, schemes, and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on the plaintiffs, all in violation of the Pennsylvania Securities Act, 70 Pa.C.S.A. § 1-401.

60.     In selling the investments to Mr. Seale, Zaehringer violated the Pennsylvania Securities Act including, but not limited to, the following sections:

    a.     Making material misstatements and omissions and engaging in acts and practices that operated as a fraud, thereby violating 70 Pa.C.S.A. § 1-401;

    b.     Employing various deceptive and fraudulent schemes and devices to induce Mr. Seale to purchase securities, thereby violating 70 Pa.C.S.A. § 1-403; and

    c.     Engaging in fraudulent transactions and practices as an investment advisor, thereby violating 70 Pa.C.S.A. § 1-404.

61.     Plaintiff reasonably relied on Defendants' representations and were unaware of the true facts.

62.     Plaintiff has been damaged as a result of Defendants' misconduct.

63.     Defendant Annuity FYI is liable for the securities law violations of Zaehringer under § 1-503 and pursuant to the doctrine of *respondeat superior* because Zaehringer was an agent of Annuity FYI.

64.     Defendant David Woodard is liable under § 1-501 (a) and 1-503 for his own misrepresentations and omissions and also the securities law violations of Performance Arbitrage, Financial Products Distributors and, on information and belief, Life Funding Options, because defendant had the power, directly or indirectly, to control the activities of Performance Arbitrage, Financial Products Distributors and Life Funding Options.

65.     Defendant Performance Arbitrage is also liable for the securities law violations of Woodard pursuant to the doctrine of *respondeat superior*.

66.     Defendants Kate Snyder and Michelle Plant are liable under § 1-503 for the securities law violations of Life Funding Options because defendants Snyder and Plant had the power, directly or indirectly, to control the activities of Life Funding Options.

67.     Defendant Life Funding Options is liable for the security law violations of Performance Arbitrage because LFO purchased Performance Arbitrage and assumed liability for all of Performance Arbitrage's actions.

68.     Defendant Candy Kern-Fuller is liable under § 1-503   for her own misrepresentations and omissions and also the securities law violations of Defendant Upstate Law Group because she is a partner in Upstate Law Group.  Candy Kern-Fuller and Upstate Law Group are also liable for the security law violations of the other defendants because Upstate Law Group aided and abetted the security law violations of the other defendants.

69.     Defendants materially aided in the commission of the violations described above and are further liable to Plaintiffs pursuant to 70 Pa.C.S.A. § 1-503(a).

70.     Pursuant to § 1-501 of the Pennsylvania Securities Act, Plaintiff is entitled to recover from Defendants the losses Plaintiff has sustained and will sustain and interest at the legal rate.

## COUNT FOUR – GROSS NEGLIGENCE

71.     Plaintiff incorporates herein all paragraphs above.

72.     Defendants' actions as set forth above constituted gross negligence.

73.     Defendants acted as investment advisors for Plaintiff and as such owed Plaintiff a duty of due care.

13

74.     Defendants further owed Plaintiff a duty of due care under the standards of care as defined by, *inter alia*, the applicable rules of the SEC and Pennsylvania Department of Banking & Securities, which rules require a broker to know the client's circumstances and needs and to render suitable and appropriate investment advice.

75.     Defendants breached their duties by offering misleading and fraudulent advice in the sale of investment products.

76.     Defendants' negligence was a proximate cause of the losses sustained by Plaintiff.

77.     Plaintiff is therefore entitled to judgment against Defendants in the amount of all of plaintiffs' losses, plus prejudgment and post-judgment interest.

78.     Because Defendants' conduct rose to the level of a conscious disregard of the rights of plaintiff, Mr. Seale is entitled to recover punitive damages in an amount to be determined by the jury.

## COUNT FIVE – COMMON LAW FRAUD AND MISREPRESENTATION

73.     Plaintiff incorporates herein all paragraphs above.

74.     In connection with their dealings with Mr. Seale, Defendants intentionally and recklessly employed devices, schemes, and artifices to defraud, made material misrepresentations, failed to disclose material information, and engaged in acts, practices, and a course of business which operated as a fraud or deceit on the plaintiffs, all in violation of Pennsylvania's common law of fraud and misrepresentation.

75.     In connection with the purchase and sale of the investments, Defendants engaged in devices and artifices to defraud and a course of business that operated as a fraud by his conduct as set forth above.

14

76.     In purchasing the investments, Plaintiff reasonably relied, to his detriment, on Defendants' misrepresentations and was unaware of the true facts.

77.     Defendants acted with knowledge of the falsity of the statements and knowledge the material facts were omitted therefrom or with reckless disregard for the truth or falsity of those statements.

78.     The purpose and effect of Defendants' misrepresentations and omissions were to cause Plaintiff to make the investments as aforesaid.

79.     Plaintiff has been damaged as a result of Defendants' misconduct.

80.     Defendant Annuity FYI is liable for its own misrepresentations and omissions and is also liable for the misrepresentations and omissions of Zaehringer pursuant to the doctrine of *respondeat superior* because Zaehringer was an agent of Annuity FYI.

81.     Defendant David Woodard is liable for his own misrepresentations and omissions and for the misrepresentations of Performance Arbitrage, Financial Products Distributors and, on information and belief, Life Funding Options because defendant had the power, directly or indirectly, to control the activities of Performance Arbitrage, Financial Products Distributors and Life Funding Options.

82.     Defendant Performance Arbitrage is liable for the Woodard's misrepresentations pursuant to the doctrine of *respondeat superior* because Woodard was an agent of Performance Arbitrage.

83.     Defendants Kate Snyder and Michelle Plant are liable for the misrepresentations of Performance Arbitrage and Life Funding Options because Defendants had the power, directly or indirectly, to control the activities of Life Funding Options, which purchased Performance Arbitrage.

15

84.     Defendant Life Funding Options is liable for the fraud of Performance Arbitrage because LFO purchased Performance Arbitrage and assumed liability for all of Performance Arbitrage's actions.

85.     Defendant Candy Kern-Fuller is liable under for her own misrepresentations and omissions and also the misrepresentations and omissions of defendant Upstate Law Group because she is a partner in Upstate Law Group.  Candy Kern-Fuller and Upstate Law Group are also liable for the fraudulent activities of the other Defendants because Upstate Law Group aided and abetted the fraudulent activities of the other Defendants.

86.     Plaintiff is entitled to recover from Defendants' compensation for all Plaintiff's losses, plus interest.

87.     Plaintiff is also entitled to recover punitive damages because of Defendants' willful fraud and misconduct.

## <u>COUNT SIX – CIVIL CONSPIRACY</u>

88.     Plaintiff incorporates herein all paragraphs above.

89.     Zehringer, along with various associates persons and entities including Woodard (and his affiliated entities), Gamber (and his affiliated entities) Snyder and Plant (and their affiliated entities), and Kern-Fuller (and her affiliated entities), conspired and/or agreed to commit and unlawful act and/or engage in a lawful act by unlawful means for an unlawful purpose.

90.     Specifically, Defendants and Zaehringer engaged in a civil conspiracy to defraud Mr. Seale.

91.     Defendants' activities reflect the joint assent of two or more parties in furtherance of an unlawful enterprise.

92.     The primary purpose of the combinations of these defendants and Zaehringer was to injure and defraud Mr. Seale.

93.     Plaintiff was harmed as a consequence of the civil conspiracy of Zaehringer and Defendants.

## COUNT SEVEN –PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. §201-1 *et seq.*)

94.     Plaintiff incorporates herein all paragraphs above.

95.     Mr. Seale made the federal pension investments based upon representations by Mr. Zaehringer and through him Defendants that investments would be made consistent with his personal goals, financial needs and investment objectives.

96.     At all times material hereto, Mr. Zaehringer was acting as an agent or representative of Defendants.

97.     The services rendered by Defendants were primarily for personal, family or household purposes.

93.     Mr. Seale purchased the federal pension investments for his personal investment needs.

94.     Defendants, and each of them, engaged in unlawful methods of competition and unfair and deceptive acts and practices in the conduct of their trade or commerce as defined under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 73 P.S. §201-1 et seq., Section 201-2(4)(i) through (xxi). That conduct includes but is not necessarily limited to:

> a.   Section 201-2(4)(ii) – causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

17

b.  Section 201-2(4)(iii) – causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

c.  Section 201-2(4)(v) – representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

d.  Section 201-2(4)(vii) – representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

e.  Section 201-2(4)(xv) – knowingly misrepresenting that services, replacements or repairs are needed if they are not; and

f.  Section 201-2(4)(xxi) – engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

95.   Mr. Seale suffered harm as a result of Defendants' unfair and/or deceptive conduct in connection with the handling of investment activities, and more specifically, the aforementioned federal pension investments.

96.   Defendants' conduct constitutes reckless and/or fraudulent conduct, which created a likelihood of confusion and misunderstanding on the part of Mr. Seale.

97.   Defendant's conduct was under the guise of investing in federal pension investments necessary to Mr. Seale achieving his financial goals.

98.   Defendants did not undertake their obligation to perform proper due diligence concerning the investments.

99.   Mr. Zaehringer was engaging in sales tactics on behalf of Defendants to further their own financial interest in what is a direct conflict of interest.

100.   Defendants were deceptive by not providing full disclosure as to the underlying federal pension investments both at the time of introduction and thereafter in oversight.

101.   The services provided by Defendants were specifically encompassed within the provisions of the UTPCPL and deemed unlawful.  43 P.S. §201-3.

18

102.    Defendants are therefore collectively liable for the violation of the UTPCPL individually and as principal and/or pursuant to the doctrine of *respondeat superior* for the conduct of Mr. Zaehringer and other agents of Defendants.

103.    The recovery available to Mr. Seale under the UTPCPL specifically includes the award of treble damages, attorney fees, expert fees and costs as measures intended to protect the consumer and deter future such conduct.

104.    The award of the full panoply of damages available under the UTPCPL is particularly appropriate in the circumstances of this case.

105.    Defendants are therefore liable to Mr. Seale for damages pursuant to the UTPCPL, including treble damages, interest, legal fees, expert fees and expenses and all and such further and additional relief as my be provided by the act or any amendments thereto, in an amount the totality of which losses will be established at time of trial.


## VI. <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Plaintiff Daniel R. Seale respectfully request that the Court:

(a)    Award judgment in favor of plaintiff and against defendants jointly and severally for all losses incurred by plaintiff as a result of the misconduct set forth above.

(b)    Award judgment for damages for growth that would have been realized had plaintiff's investments been properly invested and managed.

(c)    Award disgorgement of all fees paid to Defendants.

(d)    Award prejudgment interest and attorneys' fees in favor of plaintiff.

(e)    Award plaintiff punitive damages.

     (f)       Award plaintiff treble damages.

     (g)       Award plaintiff expert fees and costs.

     (h)       Afford plaintiff a trial by jury.

     (i)       Provide such relief as the Court deems to be just and proper.


**JURY TRIAL DEMANDED.**          Respectfully submitted,

*s/Vicki Kuftic Horne*
Vicki Kuftic Horne, Esquire
P.A. I.D. No: 36578
1380 Old Freeport Road
Suite 3A
Pittsburgh, PA 15238
412.967.9400
vkhorne@vkhorne.com

*s/Nicole Daller*
Nicole Daller, Esquire
P.A. I.D. No.:  312224
1380 Old Freeport Road
Suite 3A
Pittsburgh, PA 15238
412.967.9400
ndaller@vkhorne.com